UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTIN F. MCMAHON**<br>**1717 K St. NW, Suite 900**<br>**Washington, DC 20009**<br><br>    Plaintiff,<br><br>    v.<br><br>**SENATOR TED CRUZ**<br>**127A Russell Senate Office Building**<br>**Washington, DC 20510**<br><br>**SENATOR LINDSEY GRAHAM**<br>**290 Russell Senate Office Building**<br>**Washington, DC 20510**<br><br>**SENATOR MITCH MCCONNELL**<br>**317 Russell Senate Office Building**<br>**Washington, DC 20510**<br><br>**And**<br><br>**SENATOR RAND PAUL**<br>**167 Russell Senate Office Building**<br>**Washington, DC 20510**<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. __<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR INTENTIONAL CRIMINAL INTERFERENCE [COUNT 1] AND A CIVIL CONSPIRACY [COUNT 2] TO DEPRIVE THE PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO WITNESS AN AUTHENTIC IMPEACHMENT TRIAL RATHER THAN A TRUNCATED TRIAL ENDING WITH A PRE-ORDAINED VERDICT. PLAINTIFF ALSO REQUESTS AN AWARD OF ANCILLARY RELIEF CONCERNING THE EMPANELLING OF AN INNOMINATE JURY [COUNT 3]**

**INTRODUCTION**

COMES NOW the Plaintiff herein, Martin F. McMahon, and acting *pro se* on his and

other American citizens behalf complains of Defendants as follows. As alleged herein,

Defendant McConnell has declared that, as the jury foreperson, in the upcoming impeachment trial of President Trump, he will follow in "lock step" fashion the directives issued to him by President Trump's counsel as to how the trial is to be conducted. As this Court knows, a jury foreperson cannot consult with Plaintiff's or Defendant's attorneys before or during a trial, let alone receive and follow instructions given by a party's attorney.

Defendant McConnell owes a fiduciary duty to the Plaintiff and all Americans not to interfere with an American citizen's constitutional right to witness an authentic impeachment trial and determine for themselves, whether Republican or Democrat, whether or not the President has abused the powers of his office. As this Court can appreciate, America is at a tipping point in terms of confronting a pattern of criminal corruption [the Trump administration record] versus ensuring that American values [the rule of law and the integrity of government institutions like the FBI] endure and thrive.

These are not ordinary times as this Court no doubt knows, and a divided country is a threat to the republic. Defendant McConnell's obvious, undivided allegiance to an impeached President and allowing him to, in effect, conduct the defense of President Trump would only increase the divide that now exists in America and in his congressional district. The Plaintiff seeks an award of declaratory relief, i.e. Senator McConnell must step aside and allow an impartial and respected senator to coordinate and conduct President Trump's impeachment trial.

As this Court knows, President Trump's impeachment trial is scheduled to start in January. The Plaintiff brings this suit to ensure that his constitutional right based on the Ninth Amendment, as an American citizen, to witness an authentic impeachment trial is protected.  The Defendants named herein intend to serve as a jury foreperson [Defendant McConnell] and as jurors in that trial. The reason the Plaintiff complains about these Defendants is that they have

conspired to deprive all Americans of their right to secure the benefits of an authentic

impeachment trial, i.e. they have the right to know whether or not their president is a crook. As

detailed herein, Defendant McConnell has, e.g. tried to intimidate his fellow jurors and convince

them not to remove the President from office, no matter what the evidence shows. Defendants

Graham and Cruz have admitted that they have already made up their minds and seek a quick

end to the trial. They are on record stating that they will not vote for removal of the President no

matter what the evidence proves. Using different language, Senator Paul has essentially made the

same observation although he is recently in the process of backing off the statements he made

indicating his bias.

Based on other statements made by Defendant Graham concerning the trial in the

presence of Senator John Thune, his trusted colleague and other senators, it appears that another

eight or nine Republican Senators may need to be disqualified. During press conferences with

Senators Thune, Cornyn and other colleagues looking on and nodding in approval, Senator

Graham said he would do everything in his power to end the ordeal quickly. He offered two

reasons: (1) the case is very weak; and (2) no Republican Senator will vote for President

Trump's removal, regardless of the evidence presented. Having Senators like those named

herein, and Senators Thune and Cornyn on a jury returning a verdict for the President guarantees

a partial and tainted result our forefathers never intended. That result would bring into question

why our forefathers bothered to insert an impeachment clause in the U.S. Constitution.

Republican Representative Mike Johnson has recently weighed in on this issue. Taking

orders from Defendant Graham, he recently warned the American people that a prolonged trial

would hurt the republic - "they [Republican Senators] know how the trial will end," so

prolonging the trial will hurt the republic. The question the Congressman doesn't address is

whether having biased jurors like Defendants Graham, Cruz, McConnell and Paul returning a pre-ordained tainted verdict will: (a) damage the Republic in a much more serious and permanent manner; (b) increase the divisiveness which is rampant in the country and in his congressional district; and (c) deny Americans the benefit of an authentic impeachment trial, i.e. determine for themselves if President Trump has abused the powers of his office.

In terms of relief, Plaintiff seeks an Order which disqualifies these Defendants from serving as floor manager and as jurors and any other Senators who have shown that they are incapable of serving as impartial jurors. Plaintiff seeks additional ancillary relief as explained herein which, if granted, will serve to ensure that justice is served, and the rule of law is preserved, i.e. by empanelling an innominate jury. As this Court knows, either we as American citizens respect the rule of law and the revered institutions which President Trump denigrates every day or the Republic will dissolve. As Benjamin Franklin put it "we have given birth to a democracy, see if you can preserve it." This lawsuit is a small step taken to make sure future generations of Americans have a democracy to preserve.

## **JURISDICTION**

1.  USC 28 Section 1331 federal question.

2.  USC 28 Section 1332 diversity jurisdiction.

3.  Missouri v. Nat'l Organization for Women, 620 F.2d 1301, 1318 (8th Cir. 1980)

    a.  "The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." Missouri v. National Organization for Women, Inc., 467 F. Supp. 289, 303 (W.D. Mo. 1979).

4. The Ninth Amendment of the U.S. Constitution recites that "the enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." Plaintiff submits that he has a right to observe an authentic jury trial based on the Ninth Amendment. In other words, a right retained by the American people is the right to observe an authentic impeachment trial under the circumstances at bar.

## VENUE

5. All parties live or work in Washington, D.C. thus attending court proceedings here will not impose a hardship on any party.

## PARTIES

6. **Plaintiff** Martin F. McMahon lives and works in Washington, D.C. and like most Americans is concerned that America is at a tipping point. Like a lot of Americans, he contributed to the campaign of Republican Governor John Kasich of Ohio during the 2016 presidential election. He believed that he was an honest and competent presidential candidate. Respecting the rule of law and once revered federal institutions has fallen out of favor as a direct result of having a criminal occupying the White House. Allowing a biased jury to make sure President Trump cannot be removed from office under any circumstance will only reinforce the message that the rule of law can be disregarded when it suits one's agenda, i.e. getting re-elected. That decision to place job security over the national security interest of America will hasten the Republic's demise as predicted by colonial activists like Aaron Burr and Benjamin Franklin.

7. Defendants Cruz, Graham, McConnell, and Paul are all Senators duly dedicated to their respective constituencies. They will all serve as jurors in the impeachment trial unless disqualified based on their own admissions. They have no intention of voting for

President Trump's removal, no matter what the trial evidence reveals. This is not exactly

a condition conducive to dispensing fair and impartial justice.

8.  Other Americans who share Plaintiff's concerns may join this lawsuit as additional

Plaintiffs.  As made clear in recent media reports, 71% of Americans believe that they

should be entitled to hear the testimony of live witnesses. Thus, there may be other

Americans who share Plaintiff's concerns as detailed herein.

## I.        THE UNAVAILABILITY OF ALTERNATIVE REMEDIES

9.  The Plaintiff has no remedy to pursue other than filing suit in this Court. It is important to

recognize that judicial involvement in congressional affairs is not unheard of, to wit: "the

Court of Appeals reversed holding first that although courts should hesitate to interfere

with congressional actions, even where First Amendment rights are clearly implicated,

*such restraint could not preclude judicial review where no alternative avenue of relief is*

*available other than 'through the equitable powers of the Court'"*[citation omitted]

Eastland v. US Servicemen's Fund, 421 US 491 (1975) at 494.

10.  In December, the House of Representatives voted out two articles of impeachment

against President Trump. The articles will be duly presented to the Senate eventually. A

trial will be set for some time in January assuming that the Articles of impeachment are

officially delivered to the Senate. As of this filing, no trial date has been specified and

there is no judge available to hear and decide pre-trial issues. Once the Senate receives

the Articles of impeachment, its' chamber literally turns into a courtroom.

11.  The trial judge is the Chief Justice of the Supreme Court, but functions as a potted plant.

Any ruling he makes can be overturned by a majority vote in the Senate. Based upon the

remarks made by these Defendants and their negative attitude when it comes to

impeachment trials, one can assume that any ruling made by the Chief Justice that they
disagree with will be overturned as soon as possible.

12. Before trial starts, just as in any trial, the Senators swear a special oath confirming their
commitment to rendering fair and impartial justice. The relief that the Plaintiff seeks
herein, if granted by the Court, would mean the absence of Senator McConnell until his
replacement is selected which could take up to ten days. The trial cannot start in the
absence of a floor manager. The absence of Senators Cruz, Graham, and Paul will not
hold up the trial because a Senate quorum is 51. However, until this Court determines
whether there are other Senators who should be disqualified [the other relief sought by
the Plaintiff] the trial itself should not begin because that would violate Plaintiff's Ninth
Amendment right to observe an authentic impeachment trial.

13. Since there is no civil clerk's office in the U.S. Senate, even if the Plaintiff tried to file
this lawsuit in the U.S. Congress, it would be impossible to do so. And it is extremely
doubtful that trial coordinator and juror McConnell will voluntarily step aside. His party
can overrule the judge with their biased voting bloc, e.g. they'll decide on a simple voice
vote that no Republican Senator, no matter what he has admitted, needs to be
disqualified. To reiterate Plaintiff's concern, any verdict returned with these Defendants
sitting as jurors and other biased Senators sitting as jurors will be forever tainted and the
divisiveness which is rampant in America today will only increase.

## II.        APPLICATION OF POLITICAL QUESTION DOCTRINE

14. With respect to the issue of application of the political question doctrine, a few
observations are in order. First, with respect to Count Three- empanelling an innominate
jury panel to avoid application of the political question doctrine, Plaintiff is seeking

limited relief i.e. have this Court function as a Special Master. It will send its non-binding report and findings and conclusions of law to Chief Justice Roberts to assist him in managing what will be a contentious impeachment trial.

15. <u>Second</u>, when there is criminal conduct involved, and this is spelled out in earlier paragraphs, the automatic application of a federal question doctrine becomes a lot more complicated as an issue. *See* <u>Al Tamimi v. Adelson</u>, 916 F. 3d 1 (DC Cir. 2019). There it was genocide; here it is "jury tampering" and "bribery." <u>Third</u>, based on an extensive analysis in <u>Nixon v. U.S.</u>, 928 F. 2 239 (DC Cir. 1991) it appears that the senate owes "a solemn attention to fairness" concerning an impeachment trial. *See* Dissent and Concurrence by the Honorable Harry T. Edwards, Circuit Judge.

16. "Thus, what the Constitution requires of the Senate in conducting impeachment trials is not rigid adherence to criminal procedure, but *a solemn attention to fairness guided by whatever procedures the Senate finds fitted to that end"* <u>Nixon at 244</u>. It appears, however, once this trial starts, floor manager Defendant McConnell will disregard and not rely on the "litmus test" [a special juror oath] incorporated in the Senate rules governing impeachment trials. He will make no attempt to determine if any of his colleagues is a biased juror even though he knows some of them are. In fact, he will declare that all Republican Senators are eligible to sit on the jury.

17. He will also ban the live testimony of witnesses. These conclusions are based on his unequivocal statements and those that his cohorts have made. They have utter contempt for the solemn obligation they will undertake when they swear pursuant to the special oath that the justice, they dispense will be fair and reasonable. That is abject proof that they, as jurors and manager of the impeachment proceeding, will not pay "solemn

8

attention to fairness guided by whatever procedures the Senate reasonably finds fitted to that end." *See* <u>Nixon v. U.S.</u>, 928 F.2 239 (DC Cir. 1991).

18. The contempt that these Defendants have for the impeachment process leads to the obvious question: *Why did the forefathers take the trouble to incorporate an impeachment concept in the Constitution knowing that a majority political party could eviscerate that concept by virtue of a rigged impeachment trial?* The manner in which these Defendants have approached their solemn oath as jury members would indicate that they favor a mini trial and the quicker it gets over, the better. The President can then get back to the business that awaits him, including his reelection campaign. That is not punishment befitting a President who has been impeached.

19. Moreover, our forefathers never intended that: (a) Senators from either party would in effect bribe or threaten fellow colleagues to keep a despot in the White House; or (b) predetermine the result of an impeachment trial; or (c) achieve the result that a president who has been impeached would suffer no consequences for the conduct he engaged in as president.

20. With respect to the issue of "Political Question," the Plaintiff is not seeking to change or criticize or even disagree with the "policy" adopted by the US Senate concerning the conduct of an impeachment trial. The case of <u>Al Tamimi v. Adelson</u> is quite relevant re this "policy" issue- "The political question doctrine arises from the constitutional principle of separation of powers. The doctrine excludes from judicial review those controversies *which revolve around policy choices* and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the

Executive Branch." [citation omitted] <u>Al Tamimi v. Adelson</u>, 916 F. 3d 12 (D.C. Cir. 2019).

21. The DC Circuit in <u>Al Tamimi v. Adelson</u> held that if a Plaintiff is attacking a policy adopted by a branch of government, which he views as being unwise and thinks should be changed, his lawsuit will be summarily dismissed based on the political question doctrine. As explained by the Plaintiff, he is not advocating a change in "policy" re the Senate rules governing impeachment trials or the attendance of live witnesses. In fact, he is satisfied that the Senate rules governing impeachment trials will be adequate. His complaint focuses instead on the fact that, based on the utter contempt exhibited by the Defendants named herein for the impeachment process and the rule of law, they have in effect nullified the "litmus test" [the special jury oath] incorporated in the Senate rules on impeachment trials and rigged a favorable result in a jury trial.

22. As this Court probably knows that oath was required of jurors [Senators] for two reasons: (a) remind each juror how serious the matter is, i.e. the obligation to render fair and impartial justice; and b) provide a method of identifying jurors unfit for this duty and have them disqualified by Chief Justice Roberts. The Defendants have not even tried to hide the disgust with which they view the rule of law and the impeachment process. Evidence thereof is that they have advocated the need for a truncated trial with no exhibits, no witnesses, and no reading into the record of relevant deposition testimony. The floor manager, Senator McConnell has even told the country that he will dictate to Chief Justice Roberts how long the trial will last and the tainted preordained verdict his colleagues will render.

23. It is appropriate to view this issue from the perspective of a President being railroaded by a majority political party. In that different factual setting, the President has a legitimate defense, favorable witnesses who want to testify, favorable deposition testimony, and a desire to clear his name. Given the remarks made by the Defendants and their "why do we have to go through this ordeal" attitude, it is predictable if not guaranteed that when such a president shows up on day four or five of his trial, the floor manager McConnell tells him the bad news- "Mr. President, sorry we have taken a vote and you are hereby removed from office," and "we therefore don't need to hear from you, your witnesses, or read your exhibits which admittedly appear to exonerate you."

24. Under those circumstances, the American public will not be able to assess whether their president "is a crook," or a victim simply because floor manager McConnell "has seen enough" and mandated the end of the trial. That is the core complaint that the Plaintiff is advancing herein in terms of a significant injury. This is not a result that our concerned forefathers envisioned when they incorporated an impeachment mechanism into the Constitution. As this Court knows, our forefathers did not draft surplusage language for Constitutional scholars to examine in the 21st century. They were all business in Philadelphia in 1776.

**FIRST CAUSE OF ACTION INTENTIONAL AND CRIMINAL INTERFERENCE WITH THE PLAINTIFF'S RIGHT AS AN AMERICAN CITIZEN TO WITNESS AN AUTHENTIC IMPEACHMENT TRIAL AND SECURE THE BENEFITS THEREOF**

25. Plaintiff repeats and realleges paragraphs one through 24 as if fully recited herein.

26. Any impeached president has the right to a fair and impartial trial in the US Senate.

27. The corollary of that principle is that Americans, based on the Ninth Amendment, whether Republicans or Democrats, have the right to witness a bona-fide and authentic

impeachment trial with witnesses, exhibits, and deposition testimony, especially when the country is so divided.

28. American citizens like the Plaintiff deserve to learn all the facts concerning whether their President has abused the powers of his office or whether the impeachment process was initiated for an ulterior motive, e.g. did the Democratic leadership initiate the process to embarrass the president so that he would lose the 2020 election? The Defendants named herein apparently do not want American citizens to learn whether or not their President has abused the powers of his office.

29.  Concerning the role of the Senate, Aaron Burr observed 250 years ago that "the Senate floor is the final defense that Congress has at its disposal to remove a President." As explained herein the comments made by the Defendants and their negative attitude, re the need for a genuine trial will turn the Senate floor into a "Maginot" type line of defense, i.e. a nonexistent one.

30. Both Senator Cruz and Senator Paul have obviously pre-judged the outcome of the trial. Senator Cruz has called the House impeachment process a "kangaroo court." Senator Paul has made significant admissions attesting to the bias he has concerning the outcome of this trial.

31. Same with Senator Graham, "let's get over this quickly we know what the outcome will be." He has stated that he won't ever read the House trial transcript. He wants to be a close minded, uninformed juror- the worst kind any trial judge will tell you.

32. Senator McConnell has vowed to wrap up the trial quickly [he will determine how long the trial lasts, not Judge Roberts] and consult with President Trump's attorneys re trial conduct and strategy. They "will be in lock step during the trial." He doesn't want

witnesses to attend. Whoever heard of a jury foreperson being a member of a party's trial

team or dictating to the trial judge who are relevant witnesses and how long the trial will

last?

33. Every day, judges all over America set aside sufficient time to conduct a proper "*voir*

*dire*" session. Their goal- empanel an unbiased jury plain and simple in the interest of

fairness to the accused. It cannot be challenged that any judge would, in a New York

minute, disqualify potential jurors who voiced the sentiments expressed by the

aforementioned Senators during "*voir dire*."

34.  The other problem that these Defendants pose is that they endanger the integrity of the

impeachment process. Even though they all have to swear a special oath before being

allowed to sit in an impeachment trial, they have apparently decided that the special oath

means nothing to them. They actually appear to be eager to commit perjury. Given the

amount of time that our forefathers deliberated on this issue, it is truly an insult to the

values adopted by our forefathers that these Defendants would regard the special oath in

this manner.

35.  As is probably obvious to this Court, allowing these senators to serve during President

Trump's trial will so poison the process that any jury verdict would be forever tainted.

Our country has a lot of needs right now but not more divisiveness. The Court should

negate any possibility that the Senators will somehow convince their friendly floor

manager [Defendant McConnell] that they have miraculously rehabilitated themselves

and now believe they will be able to keep an open mind until all the evidence is in.

36. In view of the obvious bias expressed by these senators, the Plaintiff seeks the following

relief and requests entry of an appropriate order. First, that Senators Cruz, Graham,

McConnell and Paul be disqualified from serving as jurors in the Trump trial. Second, there are approximately eight or nine Republican senators who have made similar statements that call into question their ability to serve as unbiased jurors. The Plaintiff suggests that the Court require him to identify these Senators and set a hearing date to determine if other Senators should also be disqualified. Plaintiff also requests that this Court rule that witnesses can attend the trial and give live testimony.

37. A major concern that the Plaintiff wants to explore, and assumes that the Court would also explore, is Senator McConnell's threat made to fellow Republicans to prejudge the trial outcome or else face retaliatory actions if they don't do so. Query- have any of these senators already told their "boss" in effect not to worry they're in on the fix? The boss has enormous power to retaliate against any senator for example, revoking prestigious committee assignments, moving office location, and decrease Republican party campaign assistance. That's called "jury tampering" in criminal law or "obstruction of justice," take your pick.

38.  In terms of additional relief, to ensure fairness in this proceeding, the Plaintiff would suggest that the Court compel the attendance of a representative from the Senate office of Parliamentary Process re any issues which surface during the hearing that the court needs advice on. In effect, he becomes the court's expert. Qualified experts with divergent opinions, sponsored and paid for by Plaintiffs and Defendants herein are not suitable candidates to assist the Court in resolving the thorny issues inherent in President Trump's impeachment trial.

WHEREFORE, Plaintiff requests that all Defendants be disqualified from serving as floor managers or jurors in the Trump impeachment trial and that witnesses be allowed to attend

the trial and give live testimony. As a direct result of the Defendants' conduct as described herein, the Plaintiff has sustained a significant injury, i.e., he has been deprived of the opportunity to assess whether or not President Trump abused the powers of his office. Based on recent polling statistics, 50% of all Americans have the same concern.

## SECOND CAUSE OF ACTION: CONSPIRACY TO DENY ALL AMERICAN CITIZENS THEIR ENTITLEMENT UNDER THE NINTH AMENDMENT TO A FUNDAMENTAL, CONSTITUTIONAL RIGHT TO WITNESS A BONA-FIDE AND AUTHENTIC IMPEACHMENT TRIAL

39. Plaintiff repeats and realleges paragraphs 1 through 38 as if fully recited herein.

40. To plead a viable cause of action for civil conspiracy, a Plaintiff must allege that individuals have agreed to conspire against an individual, must perform an illegal act which advances the conspiracy, and in the process, have injured a Plaintiff. See Halberstam v Welch, 705 F. 2d 472 477 (DC Cir. 1983).

41. Plaintiff alleges that Defendants named herein have agreed to: (a) a short trial; (b) consult with President Trump's trial team on a daily basis; (c) decline to remove the President; and (d) deliver a preordained verdict, even if it conflicts with the evidence in the record. Their illicit objective- keep President Trump in office no matter what. In addition, Defendant Graham has intimidated and threatened his senatorial colleagues raising the issue of "jury tampering" or "obstruction of justice."

42. Under the current Senate rules, each Defendant will have to swear a special oath, serving as an impartial juror. Obviously, they all have utter contempt for that special oath and will intentionally perjure themselves when declaring that they will dispense "impartial" justice. What is the remedy for that criminal conduct? As of the date of this filing, the Plaintiff has no remedy to address that criminal conduct and the significant consequences

thereof. That's why limited judicial involvement in the legislative process is appropriate. See Eastland v US Servicemen's Fund, 421 US 491 (1975) at 494.

43. Our forefathers did not envision that Senators would engage in criminal conduct to secure a biased verdict regardless of the evidence in the record because they are devoted to a particular president or afraid of him.  Their conduct has deprived the Plaintiff and all U.S. citizens of their right to witness an authentic impeachment trial which includes witnesses, exhibits, deposition testimony and closing arguments.

44. As this Court knows, the reality is that 50% of Americans believe President Trump deserves to be removed and 50% don't. So why not let Americans decide that issue on their own courtesy of seeing an authentic impeachment trial unfold. Contrary to Defendant McConnell's implied sentiment, the American people are able to sift through the conflicting evidence on their own. He apparently believes that they are not interested in whether or not President Trump has abused the powers of his office and in any case, the issue is beyond their limited intellectual capacity. He has obviously significantly underestimated the intelligence, the common sense, and insight of the American people.

WHEREFORE, as explained in the first cause of action, Plaintiff has sustained a significant injury as a direct result of the Defendants' criminal conduct, i.e., he will not be able to assess whether or not his President has abused the powers of his office. Plaintiff requests that all Senators who this Court has decided have prejudged the trial's outcome and would willingly perjure themselves with respect to adhering to the special juror's oath not be sworn in as jurors in President Trump's impeachment trial. The hearing described herein should be scheduled accordingly to determine which additional Senators cannot serve as jurors in the Trump impeachment trial other than those named herein as Defendants. Based on the

remarks and threats made by Defendant McConnell, his criminal conduct should be referred to the Justice Department.

### THIRD CAUSE OF ACTION: AN AWARD OF DECLARATORY RELIEF IE DESIGNATION OF THE SENATE JURY TO BE AN INNOMINATE JURY

45. Plaintiff repeats and realleges paragraphs 1 through 44 as fully stated herein.

46. *There is a concept known as the innominate or anonymous jury.* Given the circumstances surrounding this impeachment trial, it may be necessary to invoke a hybrid innominate jury as explained herein.

47. As this Court is aware, an innominate or anonymous jury panel has been used before in Federal Court. The first time was in 1977. A notorious dope dealer, Nicky Barnes, with a vast criminal network at his disposal had threatened members of an earlier jury pool. In fact, potential witnesses scheduled to testify were actually murdered by one of his associates. The judge correctly decided under the circumstances that an anonymous panel was appropriate. A hybrid version of an innominate jury panel could be crafted in this case, which would accomplish a similar result- the rendering of fair and impartial justice. Adopting that approach here would ensure that the jury of Senators, whether Democrat or Republican, would render a fair and impartial verdict.

48. The reason is that this Court, along with a lot of Americans, have learned that there is a real perception in the halls of Congress that if Senators who desired to vote to remove President Trump did not have to be identified, the verdict would be a lot fairer and more impartial which would benefit the American people.

49. Why? A bloc [how large is anyone's guess] of Republican Senators actually support removal but are afraid that they would lose their seat and incur President Trump's wrath in doing so.

50.  With respect to that concern, our forefathers never envisioned that the Senate jury pool

would be so craven as to put the trappings of their position above the national interest of

this great country. Based on the remarks that the Defendants have made, it is obvious that

they have selected expediency over the national security of America. To reiterate, that is

not a result that our forefathers envisioned when they incorporated a mechanism of

removal from office into our Constitution. The ugly alternative- allow this president to

once again secure the assistance of a foreign country in terms of influencing the 2020

presidential election.

WHEREFORE, as explained in the first and second causes of action, the Plaintiff has

sustained a significant injury because he is unable to assess whether or not his president

abused the powers of his office. To redress this injury, the Plaintiff requests entry of an Order

referring the designation of the Senate jury to be an innominate jury to Chief Justice Roberts

once he becomes the sitting judge in President Trump's trial. This would only be a

recommendation on this Court's part, rather than an order requiring Justice Roberts to

empanel an innominate jury, relief that this Court cannot render. Therefore, the political

question doctrine should have no application to this count.

_____

Martin F. McMahon, ESQ. Bar# 196642
1717 K St. NW
Suite 900
Washington, D.C. 20006
202-862-4343